UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS REEB,

             Case No. 2:21-cv-12545

   Plaintiff,

             HONORABLE STEPHEN J. MURPHY, III

v.

ALRO STEEL CORPORATION,

   Defendant.
               /

**OPINION AND ORDER GRANTING**
**<u>MOTION FOR CONDITIONAL CERTIFICATION [15]</u>**

Plaintiff Dennis Reeb filed the present putative collective action against Defendant Alro Steel under the Fair Labor Standards Act ("FLSA") and the New York Labor Law. Shortly after Plaintiff filed an amended complaint, ECF 10, he moved for conditional certification under 29 U.S.C. § 216(b) of the FLSA, ECF 15. The parties briefed the motion. ECF 18; 19.[1] For the reasons below, the Court will grant the motion for conditional certification.

### BACKGROUND

Plaintiff was a former warehouse employee for Defendant at its Tonawanda, New York location. ECF 15, PgID 114–15. As a warehouse employee, Plaintiff worked forty hours a week, *id.* at 115, and earned hourly wages, ECF 10, PgID 48; ECF 15-5, PgID 157. Plaintiff alleged that during his employment he and other warehouse

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. See Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

employees nationwide had to work unpaid compensable time, in violation of the FLSA. ECF 10, PgID 50–55. According to Plaintiff, warehouse employees were required "to arrive [fifteen] minutes before their shifts every day." ECF 15, PgID 117. The fifteen-minute buffer was known as "Alro Time." *Id.*

Plaintiff further alleged that Defendant "round[ed] its warehouse employees' time only in its favor." *Id.* at 119. And last, Plaintiff noted that "all warehouse employees [were required to] wear hard hats, safety shoes . . . [,] and safety glasses." *Id.* at 120. But Plaintiff alleged that warehouse employees were not paid for the time between gearing up and waiting for their shifts to begin, and the time between the end of their shifts and before removing their gear. *Id.* Plaintiff called those periods "post-donning and pre-doffing time." *Id.*

Plaintiff ultimately sued Defendant "for overtime damages and penalties under the FLSA . . . on behalf of himself" and a putative collective. ECF 10, PgID 54. He defined the collective as "[a]ll current and former individuals employed by [Defendant] as warehouse employees within the three-year period immediately preceding the filing of this action." *Id.*; ECF 15, PgID 121.

## LEGAL STANDARD

Under the FLSA, employees may collectively sue their employers to recover unpaid wages. 29 U.S.C. § 216(b). "Section 216(b) establishes two requirements for a representative action: (1) the plaintiffs must actually be 'similarly situated,' and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (quoting

2

§ 216(b) and citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167–68 (1989)). An FLSA collective action "is distinguished from the opt-out approach utilized in class actions under" Federal Rule of Civil Procedure 23 because potential collective plaintiffs must "opt into the suit." *Id.* (internal quotation marks removed).

"Courts within the Sixth Circuit generally apply a two-step procedure for determining whether an FLSA case should proceed as a collective action." *Knecht v. C & W Fac. Servs., Inc.*, 534 F. Supp. 3d 870, 873 (S.D. Ohio 2021) (citation omitted). At step one, "certification is conditional 'and by no means final.'" *King v. Nat'l Pro. Staffing, LLC*, No. 20-10400, 2021 WL 5883233, at *4 (E.D. Mich. Dec. 13, 2021) (quoting *Comer*, 454 F.3d at 546). At step two, "following discovery," the Court "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. The Court "employs a stricter standard" at the second stage because it "has much more information on which to base its decision." *Id.* (quotation omitted).

Plaintiff bears the burden, at the first step, to "show[] that the employees in the proposed class are 'similarly situated.'" *Knecht*, 534 F. Supp. 3d at 873 (quotation omitted). Employees in a proposed collective are similarly situated when evidence shows that Plaintiff "and potential opt-in plaintiffs suffer from a single, FLSA-violating policy[] and . . . that their claims are unified by common theories of defendant's statutory violations." *Loomis v. Unum Grp. Corp.*, 539 F. Supp. 3d 898, 906–07 (E.D. Tenn. 2021) (cleaned up). Plaintiff satisfies his burden "even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 907

3

(quotation omitted). At bottom, the showing at step one is only "a modest factual showing," and the Court must employ a "fairly lenient" standard that "typically results in conditional certification of a representative class." *Comer*, 454 F.3d at 547 (cleaned up).

## DISCUSSION

The Court will first determine whether Plaintiff has met his "modest burden of showing that [he] is similarly situated" to the individuals of the proposed collective such that conditional certification is proper. *King*, 2021 WL 5883233, at *5. After, the Court will address Plaintiff's proposed notice and opt-in form.

I.  Conditional Certification

The Court will first detail the evidence offered by each party. After, the Court will examine the evidence under the "fairly lenient" standard to assess whether the proposed collective is similarly situated to Plaintiff.

*A. Plaintiff's Evidence*

Plaintiff offered three declarations and a deposition transcript from individuals who were employed by Defendant as well as Defendant's discovery responses from a related, out-of-circuit case, *Amandah v. Alro Steel Corp.*, Case No. 19-cv-1607 (E.D. Wis. Nov. 1, 2019). ECF 15-2; 15-6; 15-7; 15-8; 15-9. "To warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that [he] has actual knowledge about other employees' job duties, hours worked, and whether they were paid for overtime

4

hours." *Holder v. A&L Home Care & Training Ctr., LLC*, 552 F. Supp. 3d 731, 739 (S.D. Ohio 2021) (cleaned up).

First, Plaintiff offered his own declaration. ECF 15-2. He stated that "[a]t the beginning of every scheduled shift, all warehouse employees, including [him], attended a shift meeting." *Id.* at 142. Because of the meeting, the employees "were expected to arrive on [Defendant's] premises [fifteen] minutes before [their] scheduled shift start times." *Id.* The expectation was allegedly known as "Alro Time." *Id.* During the fifteen-minute buffer, Plaintiff explained that he would "put on [his] personal protective equipment ("PPE"), including boots with steel-toe attachments, hard hat, goggles[,] and warehouse uniform." *Id.* He would then "wait[] in the break room with [his] co-workers or walk[] to the warehouse floor to wait for the daily pre-shift meeting." *Id.* at 143. Plaintiff noted that he was "never paid for any time before [his] scheduled shift time," he "could never leave work earl[y]," and he "was never compensated for pre-doffing time" after his shift ended. *Id.* Thus, his hours and pay "never 'evened out' over time." *Id.*

Plaintiff also offered two declarations from former employees of Defendant's Wisconsin warehouse. ECF 15-7; 15-8. Both former employees shared similar experiences to Plaintiff's with "Alro Time." ECF 15-2, PgID 142. For the Wisconsin employees, "Alro Time" was also "an instruction or directive from [Defendant's] management that employees . . . had to arrive each day at least fifteen minutes before [their] scheduled shift start time." ECF 15-8, PgID 278; *see* 15-7, PgID 276 ("'Alro Time' meant arriving 'fifteen [] minutes early' to all scheduled activities . . . including

5

our scheduled shift start times, pre-shift meetings, and any [company] meetings that were held 'off-site.'"). What is more, both Wisconsin employees explained that they would "clock[] in" before their scheduled shift times, don their uniforms and PPE, and then "wait[] for [the] 'pre-shift' meetings to begin." ECF 15-7, PgID 277; ECF 15-8, PgID 279. And like Plaintiff, the employees were not paid for the buffer time. ECF 15-7, PgID 277 ("I understood that 'Alro Time' literally meant 'Alro's Time,' as in no employees, including myself, were paid for it."); ECF 15-8, PgID 279; *see* ECF 15-2, PgID 142–43.

Last, Plaintiff offered testimony from an "educational manager" at Defendant's headquarters in Michigan. ECF 15-6, PgID 220–21; *see* ECF 10, PgID 48 ("Defendant Alro is . . . headquartered in Jackson, Michigan."). An educational manager "assist[s] with [] training documents" by "revisiting older versions and updating them and developing new training." ECF 15-6, PgID 220. The training documents include an "onboarding manual"; Defendant trains all warehouse employees "under the same [onboarding] manual." *Id.* at 221.

The Educational Manager explained that "Defendant has an employee handbook for all [seventy] of its locations," and that "the employee handbook sets forth the expectations for all of [Defendant's] warehouse employees." *Id.* at 226; *see also* ECF 15, PgID 119. She also confirmed that if someone were to "ask[] an employee of [Defendant] what Alro time was, . . . they would probably know what it meant." ECF 15-6, PgID 235–36; 248–50. Indeed, even the Educational Manager "observe[d] Alro time," because it was "part of the custom at [the company] to observe Alro

6

Time . . . [i]n certain situations." *Id.* at 236–37. And Defendant echoed the understanding in its tenth interrogatory response to the question, "What is Alro Time?". ECF 15-9, PgID 286 ("Alro Time" includes the "expectation [] that you will arrive [fifteen] minutes early" "if you have a meeting or work off site."). Last, the Educational Manager noted that she was unaware of any facility that does not "have a daily shift meeting," and that it is "a requirement to the job if you are on the warehouse floor to have [the] protective equipment on." ECF 15-6, PgID 253, 257.

    B.    *Defendant's Evidence*

Defendant offered two employee declarations. ECF 18-1; 18-2. The first declaration is from Defendant's Vice President of Human Resources. ECF 18-1, PgID 554. He noted that eleven of Defendant's seventy-eight warehouse "facilities are represented by unions and work under the terms of collective bargaining agreements." *Id.* at 555. But the facility where Plaintiff worked lacked union representation. *Id.* The Vice President added that Defendant "does not maintain any policies or practices requiring hourly warehouse employees to report to the facility at which they work fifteen minutes prior to the start of their shift." *Id.* at 555. And "no policies [are] in place that would allow discipline or other negative treatment to [] warehouse employee[s]" if they failed to arrive fifteen minutes early. *Id.* at 555–56. Instead, the fifteen-minute buffer known as "Alro Time" was "part of the culture of the [c]ompany" that meant "one should arrive or plan to arrive fifteen minutes early so as to guarantee on time arrival." *Id.* at 556. The Vice President also confirmed that new warehouse employees were taught about "Alro Time" during the onboarding

7

process. *Id.* They were told that "Alro Time is [fifteen] minutes early. We do not expect you to arrive to work [fifteen] minutes early every day, but if you have a meeting . . . the expectation is that you will arrive fifteen minutes early." *Id.* at 557.

As for PPE, the Vice President noted that "some facilities require use of different PPE than that required to be used by" other facilities. *Id.* And "[f]or time keeping purposes," he explained that Defendant uses a "rounding practice" in which the system "will round to the start of the employee's shift" if they "punch-in [fifteen] minutes or less prior to the employee's shift." *Id.* at 558–59. If employees punch out nine minutes or less after their shift ends, the system "will round back to end-of shift." *Id.* at 559 ("System will round back to out time if punch is [nine] minutes or closer to out time. Ex: 6:39 a.m. and earlier will round back to 6:30 a.m."). Last, the Vice President reported that Plaintiff "punched in [fifteen] or more minutes before the scheduled start time of his shift" 161 out of 299 days. *Id.* at 559–60. On the 138 days that he punched in less than fifteen minutes prior to his start time, he "was never disciplined for being tardy or late." *Id.* at 560.

The second declaration is from the Assistant General Manager at Plaintiff's warehouse. ECF 18-2, PgID 593. The Assistant General Manager stated that each warehouse shift starts with a shift meeting. *Id.* at 594. He explained that an "employee is considered to be on time" if he "has punched-in prior to the start of his[] shift and arrives to the shift meeting by the scheduled start of his shift." *Id.* The Assistant General Manager also confirmed that he has "never issued or authorized the issuance of discipline to employees for tardiness because the employee failed to

8

arrive [fifteen] minutes prior to" their shift start time. *Id.* Although employees may "put on the required PPE at home or outside their vehicle prior to entering the [] facility," they "should arrive at the shift meeting in their uniforms, with their required [PPE]," and "they should have taken care of any personal business . . . before the shift begins." *Id.* at 594–96. Employees were also allowed to dress in a facility's locker room. *Id.* at 595. Last, the Assistant General Manager stated that Defendant "does not set the time at which the employee[s] must arrive at the plant other than to require that they be present at the start of the shift meeting." *Id.* at 597.

### C. *Similarly Situated Plaintiffs*

Plaintiff has shown that the employees in the proposed collective are similarly situated and has presented evidence of a "common policy or plan that violated the law." *Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819, 825 (E.D. Mich. 2009) (quotation omitted). The declarations from the Wisconsin employees and Plaintiff show that warehouse employees share similar experiences at different branches of Defendant's company. And the Educational Manager's deposition testimony bolsters the three declarations. Taken together, the evidence points to a policy or expectation instituted at all of Defendant's locations, "Alro Time," that potentially violated the FLSA. ECF 15-2, PgID 142; ECF 15-6, PgID 235–36; 248–50; ECF 15-7, PgID 276; ECF 15-8, PgID 278; *see Myers v. Marietta Mem. Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) ("Plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with

9

that policy proves a violation as to all the plaintiffs.") (internal quotation marks and quotation omitted).

The evidence also shows that warehouse employees were expected to wear PPE before starting their shifts. ECF 15-2, PgID 142–43; ECF 15-6, PgID 253, 257; ECF 15-7, PgID 277; ECF 15-8, PgID 279. And the different circumstances and policies that Defendant points out, like location of a pre-shift meeting, do not alter the alleged facts that employees arrived early and would "clock[] in" before their scheduled shift times, don their uniforms and PPE, and then "wait[] for [the] 'pre-shift' meetings to begin." ECF 15-7, PgID 277; ECF 15-8, PgID 279. To be sure, the former employees explained that although they believed they needed to abide by "Alro Time," they were not paid for the buffer time before their shifts, including the time spent post-donning but before the pre-shift meeting. ECF 15-2, PgID 143; ECF 15-7, PgID 277; ECF 15-8, PgID 279. And Defendant's evidence showed that Plaintiff punched-in at least fifteen minutes early on most of his workdays, in line with the "Alro Time" expectation. ECF 18-1, PgID 559–60; *see* ECF 15-9, PgID 286 ("Alro Time" includes the "expectation [] that you will arrive [fifteen] minutes early" "if you have a meeting or will be off site.").

Although Defendant showed that employees may not have been disciplined for failing to arrive fifteen minutes before each pre-shift meeting, the employees were told during the onboarding process that "the expectation is that [they] will arrive fifteen minutes early" to any meeting, ECF 18-1, PgID 557; and every warehouse shift "beg[an] with a shift meeting," ECF 18-2, PgID 594. Thus, Plaintiff and all other

10

warehouse employees were "expected to arrive on [Defendant's] premises" fifteen minutes early. ECF 15-2, PgID 142. In all, Plaintiff's evidence is enough to support his claim that any FLSA violation relating to the "Alro Time" expectation was experienced at other warehouses. And Plaintiff's declaration was supported by the declarations of other employees' that were offered by both parties and it establishes that Plaintiff sufficiently alleged facts "to support an inference that [he] has actual knowledge about other employees' job duties, hours worked, and whether they were paid for overtime hours." *Holder*, 552 F. Supp. 3d at 739 (cleaned up).

Defendant lodged three arguments against certification: (1) Defendant's practices did not violate the FLSA; (2) Defendant's facilities feature union and non-union facilities and are therefore dissimilar for collective action purposes; and (3) the Wisconsin case should not be relied on to support certification. *See* ECF 18, PgID 538–49. But the arguments do not weigh against certification for three reasons.

One, at the conditional certification stage, "court[s] should not weigh the merits of the underlying claims." *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1076 (M.D. Tenn. 2015) (collecting cases); *see Loomis*, 539 F. Supp. 3d at 905 (citations omitted). "Rather, such a decision should be made at the second stage, 'following discovery, [where] trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated.'" *Loomis*, 539 F. Supp. 3d at 906 (alteration in original) (quoting *Comer*, 454 F.3d at 547). Thus, Defendant's substantive arguments are premature at the conditional certification stage. *See* ECF 18, PgID 538–47; *Bradford*, 137 F. Supp. 3d at 1075 ("[Defendant's]

11

substantive arguments against certification that are based upon the merits of the plaintiffs' FLSA case are premature.").

Two, Defendant did not support its argument about the union and non-union facility distinction with any facts that show whether those facilities included collective bargaining agreements that bear on the issues raised here. *See id.* at 547–48. The Vice President noted that there are eleven unionized facilities, but no facts suggest that any collective bargaining agreement specifically addressed the fifteen-minute buffer time, the time post-donning but pre-shift, or the time post-shift but pre-doffing. *See* ECF 18-1, PgID 555. At any rate, the Court can "examine more closely" whether the union and non-union distinction reveals that "particular members of the class are, in fact, similarly situated" after discovery. *Comer*, 454 F.3d at 547.

Three, Plaintiff's reliance on evidence from the Wisconsin case is not "misplaced" as Defendant argued. ECF 18, PgID 549. As explained earlier, the declarations and testimony from that case bolster Plaintiff's declaration and tend to show that similar practices are instituted at other facilities affecting "similarly situated employees." *Comer*, 454 F.3d at 546. Besides, the factual finding about "material" differences between the two facilities, ECF 18, PgID 549, is an issue better addressed after discovery. *Myers*, 201 F. Supp. 3d at 890 ("At the second stage, the final certification phase, conducted after the conclusion of discovery, courts 'examine more closely the question of whether particular members of the class are, in fact, similarly situated.'") (quoting *Comer*, 454 F.3d at 547). And last, although the

12

Wisconsin court "held that no conditional certification was warranted," ECF 18, PgID 549; *see Amandah v. Alro Steel Corp.*, No. 19-CV-1607, 2020 WL 4926653, at *4 (E.D. Wis. Aug. 21, 2020), that finding is neither binding nor persuasive on this Court. Indeed, Plaintiff acknowledged as much, and he did not rely on that decision to bolster the certification argument. ECF 15, PgID 130–32. Plaintiff instead used evidence from the Wisconsin case to show that employees from other facilities alleged similar experiences as Plaintiff and faced similar treatment by Defendant. *Id.* at 116–21.

All told, Defendant's arguments do not prevent Plaintiff from meeting the lenient standard for conditional certification. At the conditional certification stage, Plaintiff "need only made a 'modest factual showing' that [he] is similarly situated to proposed class members," and Plaintiff has met his low burden. *Myers*, 201 F. Supp. 3d at 890 (quotation omitted). The Court will therefore grant conditional certification.

II.   Proposed Notice and Opt-In Form

Because the Court has granted conditional certification, the Court must approve Plaintiff's proposed notice and opt-in form. *Holder*, 552 F. Supp. 3d at 738 ("If plausible grounds exist and [the C]ourt grants conditional certification, then the plaintiffs may send opt-in notices to current and former employees who potentially satisfy the definition of the collective.") (citation omitted); *see also Fisher*, 665 F. Supp. 2d at 828–29 (explaining that judicial notice is appropriate to promote judicial economy and to inform potential plaintiffs that they may opt-in before the FLSA limitations period ends).

Plaintiff's proposed notice extends to "[a]ll current and former individuals employed by Alro as warehouse employees within the three-year period immediately preceding the filing of this action." ECF 15-10, PgID 299 (Proposed Notice and Opt-In Form). Defendant challenged the proposed notice on three grounds. ECF 18, PgID 550–51. First, Defendant argued that "Plaintiff does not narrow the collective to employees allegedly injured by" "Unpaid Compensable Time." *Id.* at 550. Next, Defendant stressed that "the notice should be limited to a two-year period" because Plaintiff did not offer "evidence to support a finding that Defendant willfully failed to compensate its employees as required under the FLSA for a three-year statute of limitations." *Id.* (citing 29 U.S.C. § 255(a)). Last, Defendant objected that the notice does not inform potential opt-in plaintiffs that they "may be required to participate in written discovery, sit for a deposition, or testify at trial." *Id.* at 550–51 (citation omitted). Nevertheless, the Court will approve in part the proposed notice and opt-in form.

Defendant's first objection is meritless. Defendant offered no support that an opt-in notice must delineate the subjective beliefs of potential collective members. *See id* at 550. And based on the Court's research, subjective belief is only relevant for proving a prima facie FLSA claim. *See, e.g., Spiteri v. AT&T Holdings, Inc.*, 40 F. Supp. 3d 869, 876 (E.D. Mich. 2014) ("A further requirement [] necessary to establish the first element of Plaintiff's prima facie case, [] that Plaintiff engaged in protected activity, is sufficient proof that Plaintiff had a subjective belief that [Defendant] was violating FLSA and that such a belief was objectively reasonable.") (italics removed).

14

Besides, an opt-in form will render Defendant's concern moot because current and former employees who do not believe they have been harmed may simply forgo opting-in. *See Fisher*, 665 F. Supp. 2d at 824 ("Collective actions under the FLSA require putative class members to opt into the class, and only these opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action.") (cleaned up). There is no need to make any such distinction in the opt-in form.

The second objection bears on the notice's temporal scope. ECF 18, PgID 550. "The FLSA provides for a two-year statute of limitations. If the cause of action arises out of a willful violation, however, the statute of limitations is three years. A[n] FLSA violation is 'willful' if the employer knew or showed reckless disregard as to whether its conduct was unlawful." *Holder*, 552 F. Supp. 3d at 742 (citations omitted). Admittedly, district courts within the Sixth Circuit are split on which party bears the burden to prove or disprove willful conduct. *Compare Benion v. Lecom, Inc.*, No. 15-14367, 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016) (placing burden on the defendant and noting that "[i]t is appropriate to allow a three-year look-back period in the notice where the absence of willful conduct is not established as a matter of law by the pleadings") (cleaned up), *with Bradford v. Team Pizza, Inc.*, No. 1:20-cv-00060, 2020 WL 5987840, at *3 n.4 (S.D. Ohio Oct. 9, 2020) (placing burden on the plaintiff and finding that "[t]o establish willfulness, the plaintiff must demonstrate that the employer either knew or showed reckless disregard for whether its conduct violated the FLSA") (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). *Cf. Kim v. Detroit Med. Informatics, LLC*, No. 19-11185, 2019 WL 6307196,

at *5–6 (E.D. Mich. Nov. 25, 2019) ("Where the plaintiff alleges that the employer's violations were willful, but willfulness is disputed, as is the case here, courts in this district and elsewhere generally find that a three-year limitations period is appropriate to use in the notice to potential class members.") (citing *Mathews v. ALC Partner, Inc.*, No. 08-cv-10636, 2009 WL 10680524, at *3 (E.D. Mich. Oct. 27, 2009) (Murphy, J.)) (collecting cases).

And the Sixth Circuit has not yet clarified who bears the burden for the purpose of the opt-in notice.[2] Still, most courts place the burden on Plaintiff at the conditional certification stage. That conclusion also tracks Plaintiff's burden "to obtain the benefit of the [three]-year exception." *McLaughlin*, 486 U.S. at 135. It follows that a plaintiff "must prove that the employer's conduct was willful" under § 255(a). *McLaughlin*, 486 U.S. at 135.

Here, the amended complaint alleged that Defendant "knew of and/or showed reckless disregard for the issue of whether the Unpaid Compensable Time violated the FLSA." ECF 10, PgID 54; *see also* ECF 15, PgID 133. Defendant argued that Plaintiff's allegation lacked evidence showing "that Defendant willfully failed to compensate its employees as required under the FLSA for a three-year statute of limitations." ECF 18, PgID 550 (citing § 255(a)). But an "opt-in notice at this early stage of the litigation is to be construed broadly" to further "the remedial purposes of the FLSA." *Mathews*, 2009 WL 10680524, at *3 (Murphy, J.). And "it would be

---

[2] Perhaps the court has not acted because "a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable." *Comer*, 454 F.3d at 549.

prudent to cast a wider net with respect to potential plaintiffs at the early stage, and then limit the class—if appropriate—in the second phase of the collective action process." *Id.* (citation omitted). Plus, "this route is more practical than . . . mailing a second round of notices to potential opt-in members if the Court finds the defendants' actions constitute willfulness later in the proceedings." *Id.* As a result, the three-year limitations period applies at the present stage. *See* § 255(a).

"In the case of a collective action, for an individual claimant whose claim is not commenced as of the time the complaint is filed, that claimant's action is considered to be 'commenced' when he files written consent to opt in." *Smith v. Guidant Glob., Inc.*, No. 19-cv-12318, 2021 WL 3240391, at *8 (E.D. Mich. July 30, 2021) (citing 29 U.S.C. § 256(b)); *see Mathews*, 2009 WL 10680524, at *2 (Murphy, J.). Thus, the operative date for the limitations period will be the date each potential plaintiff's consent form is filed with the Court.[3]

Defendant last objected to the notice because it did not inform potential opt-in plaintiffs that they "may be required to participate in written discovery, sit for a deposition, or testify at trial." ECF 18, PgID 550–51. Plaintiff did not respond to the objection. *See* ECF 19. And the proposed information—that a plaintiff may have to engage in written discovery, sit for a deposition, or testify at trial—is important. After all, "[s]uch information allows potential plaintiffs to make an informed decision as to whether they wish to opt-in to the action." *Knispel v. Chrysler Grp. LLC*, No. 11-

---

[3] For instance, if Plaintiff's counsel files an individual's consent form on May 1, 2022, then Defendant must have employed the individual on or after May 1, 2019.

17

11886, 2012 WL 553722, at *7–8 (E.D. Mich. Feb. 21, 2012) (collecting cases). Thus, the notice must contain a statement notifying potential opt-in plaintiffs that they "may be required to participate in written discovery, sit for a deposition, or testify at trial." *See* ECF 18, PgID 550–51.

Finally, Defendant did not object to Plaintiff's other requests for the proposed notice and opt-in form, *see* ECF 18, PgID 550–51, and the remaining requests are reasonable, *see* ECF 15, PgID 132–37. Thus, the Court will also approve the following requests:

- Plaintiff may include a ninety-day opt-in period.
- The notice may be issued electronically or though the United States Postal Service.
- Plaintiff's counsel may issue the notice to the potential collective members.
- Defendant must provide Plaintiff's counsel with contact information necessary to ensure delivery of notice, including each individual's (1) name, (2) last known mailing address, (3) last known email address, and (4) last known telephone number.
- Plaintiff's counsel may issue a reminder notice forty-five days before the close of the opt-in period.

## CONCLUSION

In sum, the Court will grant conditional certification and approve Plaintiff's proposed notice and opt-in form in part. The notice and opt-in form, ECF 15-10, must adhere to the seven conditions:

1. The operative date for the limitations period will be the date each potential opt-in plaintiff's consent form is filed with the Court.

2. The notice must contain a statement notifying potential opt-in plaintiffs that they "may be required to participate in written discovery, sit for a deposition, or testify at trial."

3. Plaintiff may include a ninety-day opt-in period.

4. The notice may be issued electronically or though the United States Postal Service.

5. Plaintiff's counsel may issue the notice to the potential collective members.

6. Defendant must provide Plaintiff's counsel with contact information necessary to ensure delivery of notice, including each individual's (1) name, (2) last known mailing address, (3) last known email address, and (4) last known telephone number.

7. Plaintiff's counsel may issue a reminder notice forty-five days before the close of the opt-in period.

**WHEREFORE**, it is hereby **ORDERED** that the motion for conditional certification [15] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's proposed notice and opt-in form, ECF 15-10, is **APPROVED IN PART**, subject to the seven above-mentioned conditions.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 15, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 15, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager