## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DENNIS REEB, individually and on
behalf of similarly situated persons,

        Plaintiff,

                         Case No. 2:21-cv-12545

    v.

                         Hon. Stephen J. Murphy, III

ALRO STEEL CORPORATION,

        Defendant.

---

## PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF OPT-IN SETTLEMENT AND FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF SERVICE AWARD

Plaintiff Dennis Reeb, through his undersigned counsel, respectfully moves this Court for an Order:

1. Granting final approval of the parties' Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act ("FLSA").

2. Approving Plaintiff's unopposed request for payment from the settlement fund for attorneys' fees in the amount of one-third of the fund ($152,000.00);

3. Approving Plaintiff's unopposed request for payment from the settlement fund for counsel's litigation costs, not to exceed $5,000.00;

4. Approving Plaintiff's unopposed request for payment from the

settlement fund for a service award to the Named Plaintiff in the amount of $10,000.00;

5.      Approving Plaintiff's request for payment from the settlement fund for the third-party settlement administrator not to exceed $12,000.00;

6.      Approving the plan of distribution and directing that the settlement funds be distributed in accordance with the terms of the Settlement;

7.      Approving the National Employment Law Project ("NELP") as *cy pres* beneficiary of the Settlement and finding that its interests reasonably reflect the claims being pursued in this action;

8.      Granting Plaintiff's request to withdraw the Opt-in forms of Diersahawta Johnson and Tamon Stephen, Jr. because the Parties were unable to verify that either of these individuals worked for Defendant during the relevant time period;

9.      Dismissing this action with prejudice and entering final judgment; and

10.     Reserving exclusive and continuing jurisdiction over this action for purposes of supervising the implementation and enforcement of the Settlement Agreement and this Order.

This Motion is based on the accompanying Memorandum of Law, the Declarations of David M. Blanchard and Matthew D. Carlson, and all other records, pleadings, and papers on file in this action. Pursuant to the terms of the Settlement

Agreement, Defendant does not oppose this Motion.

A proposed Order is submitted for the Court's consideration.

Respectfully submitted,

BLANCHARD & WALKER, PLLC          LAW OFFICE OF MATTHEW D.
                                  CARLSON

/s/ David M. Blanchard
David M. Blanchard (P67190)       Matthew D. Carlson
Frances J. Hollander (P82180)     3959 N. Buffalo Road, Suite 29
221 N. Main Street, Suite 300     Orchard Park, NY 14127
Ann Arbor, MI 48104               Telephone: (716) 242-1234
(734) 929-4313                    mdcarlson@mdcarlsonlaw.com
blanchard@bwlawonline.com
hollander@bwlawonline.com

*ATTORNEYS FOR PLAINTIFF*

Dated:  December 14, 2022

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DENNIS REEB, individually and on
behalf of similarly situated persons,

        Plaintiff,

                                Case No. 2:21-cv-12545

    v.

                                Hon. Stephen J. Murphy, III

ALRO STEEL CORPORATION,

        Defendants.

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## UNOPPOSED MOTION FOR FINAL APPROVAL OF OPT-IN
## SETTLEMENT AND FOR ATTORNEYS' FEES, COSTS, AND NAMED
## PLAINTIFF SERVICE AWARD

# TABLE OF CONTENTS

_Toc121829134

**ISSUES PRESENTED** ........................................................................ III

**CONTROLLING OR MOST APPROPRIATE AUTHORITY** ..................... IV

**I.     INTRODUCTION** ........................................................................ 1

**II.    FACTUAL BACKGROUND** ......................................................... 2

**III.   THE TERMS OF THE SETTLEMENT AGREEMENT** ..................... 4

   **A.   THE SETTLING OPT-IN PLAINTIFFS** ................................... 4

   **B.   THE SETTLEMENT AMOUNT** ............................................. 4

   **C.   CALCULATION AND DISTRIBUTION OF THE NET SETTLEMENT AMOUNT** ... 5

   **D.   RELEASE OF CLAIMS** ...................................................... 5

   **E.   DATA REGARDING THE SETTLEMENT AMOUNT** .................. 6

**IV.    DISCUSSION** ............................................................................ 7

   **A.   LEGAL STANDARD** .......................................................... 7

      **1.   *The Settlement Agreement Is a Compromise of a Bona Fide Dispute*** .......................................... 9
      **2.   *The Settlement Amount is Fair and Reasonable*** .......... 10
      **3.   *Anticipated Burdens and Expenses of Litigation*** ......... 11
      **4.   *Seriousness of the Litigation Risks*** .......................... 11
      **5.   *Arm's-Length Bargaining Between Experienced Counsel*** .. 12
      **6.   *Possibility of Fraud or Collusion*** ............................ 13

   **B.   THE COURT SHOULD APPROVE PLAINTIFF'S REQUEST FOR FEES AND COSTS** ... 14

      **1.   *The Requested Fee Award Is Reasonable*** ................... 14
      **2.   *The Court Should Approve Payment for Plaintiff's Litigation Costs*** ............................................. 21

   **C.   THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD** ......... 22

   **D.   THE COURT SHOULD APPROVE THE REQUESTED THIRD-PARTY SETTLEMENT ADMINISTRATOR PAYMENT** .......... 24

**III.   CONCLUSION** ......................................................................... 24

# ISSUES PRESENTED

I.     Whether the proposed Settlement Agreement is fair and reasonable and should be approved.

Plaintiff's Answer:         Yes

Defendants' Answer:        Yes


II.    Whether Plaintiff's requested attorneys' fees, litigation costs, Named Plaintiff service award, and third-party settlement administrator costs should be approved.

Plaintiff's Answer:         Yes

Defendants' Answer:        Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Lynn's Food Stores, Inc. v. United States*, 769 F.2d 1350 (11th Cir. 1982)

*Brown v. AK Lawncare, Inc.*, No. 14-14158, 2017 U.S. Dist. LEXIS 71825 (E.D. Mich. May 11, 2017)

*Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D. Ohio May 4, 2018)

*Fegley v. Higgins*, 19 F.2d 1126 (6th Cir. 1994)

## I.    INTRODUCTION

Plaintiff Dennis Reeb moves for approval of the Parties' Final Settlement Agreement and Release (the "Settlement" or "Agreement") (Ex. 1), which provides for a settlement fund of $456,000.00 to be distributed to the 389[1] opt-ins in the case in exchange for a release of wage and hour claims. As discussed further herein, because the Settlement resolves only wage and hour claims by individuals who have already opted into the case and who have expressly agreed to permit the Named Plaintiff and Plaintiff's counsel to resolve their claims,[2] this Court need only apply a one-step approval process; a notice period is not required.[3]

As also discussed further herein and in the Declarations by Plaintiff's counsel submitted concurrently herewith (Ex. 2, Declaration of David Blanchard ("Blanchard Decl."); Ex. 3, Declaration of Matthew D. Carlson ("Carlson Decl.")), the Settlement is a fair and reasonable resolution of a *bona fide* dispute. Accordingly, Plaintiff respectfully requests that the Court issue an Order: (1) approving the Settlement as fair and reasonable; (2) approving payment from the settlement fund

---

[1] In reviewing the Opt-ins and the data Defendant provided, the Parties were unable to verify that Opt-in Plaintiffs Diershawta Johnson and Tamon Stephen, Jr. worked for Defendant during the relevant time period. Plaintiff hereby requests that this Court permit Plaintiff to withdraw the Opt-in forms of Dierashawta Johnson and Tamon Stephen, Jr.

[2] *See* ECF No. 15-10, PageID. 301 (sample opt-in form) at 4.

[3] The Complaint in this case also asserts claims under the New York Labor Law. The Agreement does not, however, release such claims on a class basis.

for Plaintiff's counsel's fees in the amount of one-third of the Gross Settlement Amount, or $152,000.00; (3) approving payment from the settlement fund for Plaintiff's out-of-pocket litigation expenses in the amount not to exceed $5,000.00 (3) approving a service award from the settlement fund to Named Plaintiff Dennis Reeb in the amount of $10,000.00; (4) approving payment from the settlement fund for the third-party settlement administrator not to exceed $12,000.00; (5) dismissing this case with prejudice; and (6) reserving exclusive and continuing jurisdiction over this action for purposes of supervising the implementation and enforcement of the Settlement and approval Order.

## II.     FACTUAL BACKGROUND

Plaintiff Dennis Reeb worked for Defendant Alro Steel Corporation ("Alro") as a warehouse employee from October 2019 until March 2021. *See* ECF No. 15-2, PageID. 141-143 (Reeb Declaration). Plaintiff has alleged that he and other warehouse employees in Alro locations throughout the nation were expected to arrive at work 15 minutes early but were not paid for such time, that Alro improperly rounded their time, and that Alro did not pay warehouse employees for their post-uniform donning and pre-uniform doffing time (collectively, "Unpaid Compensable Time"). *See generally* ECF No. 6 (operative Complaint). Plaintiff has further alleged that Alro's failure to compensate warehouse employees for this allegedly Unpaid Compensable Time resulted in overtime violations under federal and state law. *Id.*

Alro contends that the allegedly Unpaid Compensable Time is not compensable because warehouse employees are not required to report to work early and perform no actual work prior to the start of their shift. *See generally* ECF No. 19 (Opposition to Motion for Conditional Certification); Blanchard Decl. at ¶ 18. Alro has further contended that even if Unpaid Compensable Time is theoretically compensable, its data shows members of the collective arrived at work, on average, nine minutes before shift time. *Id.* Alro contended that, if the time warehouse employees spent putting on gear is theoretically compensable, such activities take at most 90 seconds of those nine minutes. Alro contends this time is *de minimis*. *Id.* Alro has also argued that Plaintiff's theories of liability did not apply consistently throughout the relevant time period. *Id.*

Plaintiff moved for conditional certification of the proposed FLSA collective and issuance of notice thereto, which the Court granted over Alro's opposition. ECF No. 21. Of course, given the limited inquiry at the conditional certification stage, the Court did not resolve the merits of Plaintiff's Unpaid Compensable Time theories or Alro's responses thereto. *Id.*

Three hundred eighty-nine (389) warehouse employees, including Named Plaintiff, opted into the case. Blanchard Decl. at ¶ 12. After an exchange of information, multiple mediation sessions before experienced mediator David A.

Kotzian, and further negotiations thereafter, the Parties reached this Settlement, which resolves only the claims of these 389 opt-ins.

## III.   THE TERMS OF THE SETTLEMENT AGREEMENT

### A.   THE SETTLING OPT-IN PLAINTIFFS

The Settlement provides that only individuals who have opted-in to the case will release their federal and state wage and hour claims against Alro. Agreement at ¶ 3.1. The opt-ins have all expressly authorized Plaintiff and Plaintiff's counsel to resolve this action on their behalves. *See* Sample Consent Form, ECF No. 15-10, Page ID. 301, at 4.

### B.   THE SETTLEMENT AMOUNT

The Settlement provides for a <u>non-reversionary</u> payment of $456,000.00. From this amount, and subject to Court approval, $152,000.00 will be paid to counsel for their attorneys' fees, up to $5,000.00 will be paid to counsel as reimbursement for litigation-related expenses, $10,000.00 will be paid to the named Plaintiff as a service award; and up to $12,000.00 will be paid to the third-party Settlement Administrator, CAC Services Group, LLC. Agreement at ¶¶ 1.19, 2.4, 2.13, 2.14. Thus, the net settlement amount is expected to be $277,000.00 or more. *Id.*[4]

---

[4] If the cap on litigation expenses and third-party administrator expenses are not met, any leftover funds will be distributed to the opt-ins.

### C.   CALCULATION AND DISTRIBUTION OF THE NET SETTLEMENT AMOUNT

From the net settlement amount, each opt-in will receive a minimum payment for release of wage claims and a *pro rata* share of the remainder based on the number of weeks worked during the relevant period. Agreement at ¶ 2.5. Payment is due within 30 days of the Court's approval of the Agreement becoming final and non-appealable or on or before January 7, 2023, whichever is later. Agreement at ¶ 2.4. Settlement checks will be negotiable for one-hundred eighty (180) days from the date of issuance. Agreement ¶ 2.11. Any proceeds from checks that are uncashed at the end of the 180-day period will be paid to the *cy pres* recipient agreed to by the parties, the National Employment Law Project ("NELP"), whose nationwide policy objectives include fighting on behalf of employees for wage theft. *See* https://www.nelp.org/old-campaign/wage-theft-enforcement/. Agreement ¶ 2.12. [5]

### D.   RELEASE OF CLAIMS

In exchange for payment, opt-ins will release all state and federal wage and

---

[5] NELP has been approved by Courts in this Circuit as a *cy pres* beneficiary in nationwide FLSA actions such as this one. *Shanahan v. KeyBank*, No. 1:19CV2477, 2021 U.S. Dist. LEXIS 50516, at *13 (N.D. Ohio Mar. 16, 2021) (Ex. 4) (approving NELP as *cy pres* beneficiary in FLSA action and noting that "NELP's 'interests reasonably approximate those being pursued by' Class Members as its nationwide mission of, *inter alia*, strengthening protections and support for low-wage workers is in line with the broad humanitarian and remedial purpose of the FLSA") (citing *Rosser v. A & S Contracting, Inc.*, No. 2:15-cv-00711, 2017 U.S. Dist. LEXIS 23377, at *5-6 (S.D. Ohio Feb. 17, 2017)) (Ex. 5).

hour claims against Alro, including those claims that were or could have been asserted in Plaintiff's Complaint. Agreement ¶ 3.1. Named Plaintiff will generally release all claims against Alro, not just wage and hour claims. Agreement ¶ 3.2.

### E.   DATA REGARDING THE SETTLEMENT AMOUNT

To allow the parties to make informed decisions about resolution at the parties' mediation sessions, Plaintiff's counsel requested and Alro produced data from the relevant time period for all opt-ins, including: (1) weeks worked; (2) rates of pay; and (3) daily punch times. Using this data, counsel calculated that each of the opt-ins (1) worked, on average, approximately 56 weeks, (2) had an approximately $27.67 average overtime rate of pay; and (3) punched in approximately nine minutes early each day (0.75 hours per week). Blanchard Decl. at ¶ 19. However, Alro has contended that if any pre-shift time could be considered compensable, it would only be the approximately 90 seconds it took workers to dress for their shift (7.5 minutes per week, or .125 hours per week). *Id.* Thus, Plaintiff's counsel valued opt-ins' single damages at approximately $456,000.00. Using Defendant's assertion that warehouse employees worked, at most, 7.5 minutes of overtime per week, the minimum single damages would be approximately $76,000.00. Should litigation continue, there was a further risk that Alro would successfully argue that no time was compensable. The Gross Settlement Amount represents the top of the range of potential recovery. *Id.*

Plaintiff's counsel also considered Alro's contentions that the practices at issue—namely "Alro Time"—discontinued no later than September 2021. Blanchard Decl. at ¶ 19. Alro would have undoubtedly argued for decertification on this and other grounds at the more demanding decertification stage. *Id.*

## IV.   DISCUSSION

### A.   LEGAL STANDARD

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA's pay requirements are mandatory and, except in two narrow circumstances, employees' rights under the FLSA are generally not subject to waiver by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). One such circumstance, as here, is when a court reviews and approves a settlement in a private action for back wages. *Lynn's Food Stores, Inc. v. United States*, 769 F.2d 1350, 1353 (11th Cir. 1982).

In approving an FLSA settlement, the court must ensure that there is a fair and reasonable resolution of a *bona fide* dispute. *Id.* at 1354–55; *see also Brown v. AK Lawncare, Inc.*, No. 14-14158, 2017 U.S. Dist. LEXIS 71825, at *3 (E.D. Mich. May 11, 2017) (attached hereto as Ex. 6) (citing *Williams v. K&K Assisted Living*

*LLC*, No. 15-cv-11565, 2016 U.S. Dist. LEXIS 9310, at *3 (E.D. Mich. Jan. 27, 2016) (attached hereto as Ex. 7)). In doing so, the court considers several factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; (5) and the possibility of fraud or collusion.

*Id.* (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted)).

Courts routinely apply a one-step approval process to opt-in only settlements. *See Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *4 (N.D. Ohio May 4, 2018) (attached hereto as Ex. 8) (citing *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-cv-10447, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill. Nov. 29, 2016) (attached hereto as Ex. 9 (stating that "[a] one-step settlement approval process is appropriate in FLSA settlements.")). This is because FLSA collective action members have already affirmatively opted into the case, and in this case at least, have expressly authorized Plaintiff and Plaintiff's counsel to negotiate a settlement on their behalves. Conversely, settlements on behalf of a *proposed* collective, or a Rule 23 class, require notice to the collective and/or class because of due process concerns. *See id.*

## 1. *The Settlement Agreement Is a Compromise of a Bona Fide Dispute*

The Settlement reflects a compromise of a *bona fide* dispute. In the context of an FLSA case, a *bona fide* dispute exists where "both parties face risks if the Court determines the appropriate calculation of overtime pay." *Williams v. Alimar Sec., Inc.*, No. CV 13-12732, 2017 U.S. Dist. LEXIS 13530, at *6 (E.D. Mich. Feb. 1, 2017) (attached hereto as Ex. 10).

Here, the parties disputed whether opt-ins were properly compensated for overtime hours worked under the FLSA. After evaluating the evidence and performing their own investigation of the claims, Plaintiff concluded that there remained significant risks with respect to liability, damages and decertification. For example, as discussed above, there would be material disputes regarding: (1) whether any of Plaintiff's theories of Unpaid Compensable Time are, in fact, unlawful under the FLSA; (2) whether those theories apply with substantial uniformity across opt-ins; and (3) the extent to which opt-ins worked Unpaid Compensable Time. Opt-ins also faced a risk that: (4) Alro would be able to show that, even if unlawful, its practices were reasonable and in good faith; and (5) that opt-ins would be unable to prove a "willful" violation of the FLSA, which would result in a two-year, rather than three-year, relevant time period, thereby reducing the size of the collective (and, therefore, reducing the size of potential damages).

Although Plaintiff believes in the merits of his claims, given the time,

9

expenses, and risks associated with continued litigation, the parties reached a settlement that fairly reflects the risks to both sides in this *bona fide* dispute.

### 2. *The Settlement Amount is Fair and Reasonable*

At the core of *Lynn's Food* is the concept that FLSA settlements must "reflect a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." 679 F.2d at 1354. In determining whether a settlement amount is reasonable, "there is a range of reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

The settlement in this matter represents a reasonable compromise, given the disputed facts and legal complexities of the case. Plaintiff's counsel performed calculations of the possible damages for the opt-ins. Blanchard Decl. at ¶ 23. The Gross Settlement Amount of $456,000.00 represents 100% of the high end of the range of Plaintiff's estimated damages, and 600% of the low end of the range of estimated damages based on Defendant's assertions. Of course, no recovery was a possibility that Plaintiff had to consider as well. *Compare Brown*, 2017 U.S. Dist. LEXIS 71825, at *7-8 (Ex. 6) (finding that an FLSA recovery representing approximately 60% of the total amount of damages the plaintiffs could have

recovered at trial was fair and reasonable); *Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *11 (E.D. Mich. June 27, 2006) (attached hereto as Ex. 11) (finding settlement representing between 18 and 46 percent of the plaintiffs' claimed damages as being fair and reasonable). The recovery here therefore adequately reflects both the litigation risks and the benefit of receiving a certain settlement amount now without protracted litigation.

### 3. *Anticipated Burdens and Expenses of Litigation*

The settlement represents an excellent value considering the burdens and expenses of continued litigation. For example, the likely next step in the case would be voluminous, expensive, and time-consuming written discovery and a significant number of depositions of Plaintiff, opt-ins, and Alro's managerial employees. While not planned for, discovery-related motions would have been likely. Moreover, the parties would have litigated collective action treatment in Alro's eventual motion for decertification, and would have litigated dispositive motions on liability, liquidated damages, and willfulness. An eventual trial would, of course, be a tremendous expense for the parties.

### 4. *Seriousness of the Litigation Risks*

The parties vigorously dispute liability, damages, and collective treatment. Alro has contended that its practices are fully compliant with the FLSA, and that even if not, damages would be minimal. Indeed, one area of concern would have

been a potential defense that any overtime was *de minimis*. Alro has also contended that the collective would have been decertified because the practices at issue have not applied equally to all opt-ins. While Plaintiff was able to meet his burden to show that he and other opt-ins are similarly situated at the conditional certification stage, there was no guarantee that the Court would maintain the collective on a motion for decertification. Plaintiff also had to take into consideration Alro's ability to show good faith and reasonableness as a defense to liquidated damages, and Plaintiff's ability to maintain a three-year relevant time period by proving that Alro's violations of the FLSA, if any, were willful. Indeed, had Plaintiff been unable to making a showing of willfulness, many opt-ins who benefit from this settlement would have been precluded from participating in the case. Additionally, while the parties would seek to litigate the case efficiently, delay is inherent in litigation, and any theoretical recovery at the end of the case would likely take years, after resolution of appeals. Accordingly, this factor supports approval. *See Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) (finding that settlement provided an immediate value to the class and minimized the costs that plaintiffs would incur in moving forward).

### 5. *Arm's-Length Bargaining Between Experienced Counsel*

The parties were able to reach this resolution only after litigating Plaintiff's Motion for Conditional Certification, an exchange of information for mediation

purposes, and two arm's-length mediations with a qualified mediator. As described above, Plaintiff's counsel thoroughly investigated the applicable law and Alro's records to determine that this settlement represents good value for opt-ins.

Plaintiff's counsel have extensive experience in class action wage and hour litigation. Blanchard & Walker, PLLC was founded by David M. Blanchard and Angela L. Walker. Blanchard Decl. at ¶¶ 2-7. David M. Blanchard has specialized in representing employees in complex litigation matters since 2004 and has served as lead counsel or co-counsel in dozens of wage and hour class action cases and collective action cases. *Id.* Matthew D. Carlson also has extensive experience litigating wage and hour class and collective action cases, specifically including "off the clock" cases like this one. Carlson Decl. at ¶¶ 2-12.

### 6. *Possibility of Fraud or Collusion*

This settlement was the result of intensive, arm's-length negotiations between experienced attorneys who have class action wage and hour litigation experience and detailed knowledge of the legal and factual issues of this case. Blanchard Decl. at ¶ 32; Carlson Decl. at ¶ 13. Resolution only became realistic after motion practice and two mediations, and the Parties engaged an experienced, neutral mediator to mediate and facilitate continued discussions between the parties to reach this Agreement. *See Bert v. AK Steel Corp.*, No. 02-CV-647 SSB, 2008 U.S. Dist. LEXIS 111711, at *6-7 (S.D. Ohio Oct. 23, 2008) (attached hereto as Ex. 12) (stating that "[t]he

participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties."). This factor and all other factors therefore support approval of the settlement.

### B.   THE COURT SHOULD APPROVE PLAINTIFF'S REQUEST FOR FEES AND COSTS

The FLSA permits plaintiffs to recover their attorneys' fees and costs under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b). The amount of a fee award is within the discretion of the district judge. *Fegley v. Higgins*, 19 F.2d 1126, 1134 (6th Cir. 1994). Where a settlement includes payment of attorneys' fees, the court must assess the reasonableness of fees and costs. *Belmont v. Homes of Opportunity, Inc.*, No. 18-10854, 2018 U.S. Dist. LEXIS 209920, at *2-3 (E.D. Mich. Dec. 13, 2018) (attached hereto as Ex. 13) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

#### 1.   *The Requested Fee Award Is Reasonable*

The percentage-of-the-fund method is regularly utilized and approved as the formula by which to calculate attorneys' fees. *See Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. Mar. 25, 1993); *see also Swigart*, 2014 U.S. Dist. LEXIS 94450, at *15 (Ex. 14) (finding that the percentage-of-the-fund was "the most appropriate method for determining reasonable attorneys' fees" in a wage and hour case). In collective or class actions, Courts routinely approve fees amounting to one-third of

the settlement fund, as Plaintiff requests here. *See, e.g.*, *Farkas v. Boschert*, No. 17-cv-12536, 2018 U.S. Dist. LEXIS 105263, at *6-7 (E.D. Mich. June 25, 2018) (attached hereto as Ex. 15) (approving one-third of the total settlement amount in attorneys' fees); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *13 (Ex. 8) (same); *Brown*, 2017 U.S. Dist. LEXIS 71825, at *9-10 (Ex. 6) (approving fees amounting to 40% of the net recovery); *Smolinski v. Ruben & Michelle Enters. Inc.*, No. 16-cv-13612, 2017 U.S. Dist. LEXIS 64088, at *7-8 (E.D. Mich. Apr. 27, 2017) (attached hereto as Ex. 16) (approving fees amounting to one-third of the settlement fund); *see also Wise*, 835 F. Supp. at 980 ("[F]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created.").

In considering the reasonableness of the requested fee award, the Sixth Circuit looks to the following six "*Ramey*" factors:

(1)   The value of the benefits rendered to the class;
(2)   Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
(3)   Whether the services were undertaken on a contingent fee basis;
(4)   The value of the services on an hourly basis (the lodestar cross-check);
(5)   The complexity of the litigation;
(6)   The professional skill and standing of counsel on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

### a.  *The Value of the Settlement*

Counsel's work in this case resulted in a settlement that provides excellent

value to opt-ins given the strengths and weaknesses of the case. Indeed, the Gross Settlement Amount represents the top end of potential single damages, and potentially substantially more than that depending on what, if any, pre-shift time is considered compensable. Of course, there is also significant value in providing immediate relief instead of waiting years for an uncertain income. There is further material value in eliminating the significant additional legal risks and discovery-related burdens to opt-ins if the litigation were to continue. Accordingly, the value of the benefits to the FLSA Collective weighs in favor of the requested fees.

      **b.** ***Society's Stake in Rewarding Attorneys Who Produce the Benefits to the Class in Order to Maintain an Incentive to Others***

Society's stake in rewarding attorneys who bring collective action wage and hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) (attached hereto as Ex. 17) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters."). Without this lawsuit and settlement, many—if not all—of the opt-ins would not have had the resources to pursue their claims or even known they had potential claims against Alro. The requested fee is an incentive for plaintiffs' attorneys to continue their hard work on behalf of workers who may be owed money by their employers. *See* Carlson Decl. at ¶¶ 9-12. Moreover, fee awards in cases that do resolve are incredibly important because for every case in which there is a reasonable

settlement, there are other cases that fail—for example, when there are arbitration provisions that prevent workers from forming a class, or countless other pitfalls. *Id.* Without reasonable fee awards in cases like this, there would simply be too much risk with too little reward for many plaintiffs' attorneys to maintain their practices. Accordingly, this fact supports granting the fee request. *Id.*

### c. *Counsel's Risk in Litigating This Case on a Contingency-Fee Basis*

Despite the many risks associated with prosecuting this case, including issues related to certification, liability, and damages, Plaintiff's counsel took this case solely on a contingency-fee basis, advanced significant out-of-pocket expenses, and were prepared to make this investment despite the uncertainty of a successful outcome. Blanchard Decl. at ¶¶ 30, 34-46; Carlson Decl. at ¶¶ 10-12.

Plaintiff's Counsel actively and efficiently litigated this case by performing tasks integral to the successful resolution of this matter, including: (1) investigating the potential claims, including a detailed review of discovery and rulings from prior litigation against Alro; (2) drafting the Complaint and Amended Complaint; (3) interviewing putative and actual members of the collective regarding their claims; (4) preparing and serving Initial Disclosures and witness lists; (5) briefing Plaintiff's Motion for Conditional Certification; (6) working with the third-party administrator to send notice to the approved collective; (7) performing detailed damage calculations and analyzing payroll data; (8) engaging in two mediation sessions and

17

extensive meet and confers regarding data before and between sessions; (9) drafting, editing, and filing the Settlement Agreement and settlement approval papers; (10) working with the administrator to send notice to putative FLSA Collective Members; and (11) performing detailed damage calculations. Blanchard Decl. at ¶ 37; Carlson Decl. at ¶ 13. Further, Plaintiff's Counsel will continue to represent Plaintiff and opt-ins through the next several months to answer questions about the settlement and distribute settlement checks. *Id.* This factor thus weighs in favor of awarding the requested fee.

### d. *Lodestar Crosscheck*

Although courts utilize a percentage-of-the fund calculation for attorneys' fees in wage and hour cases like this one, courts also have the discretion to employ a "lodestar crosscheck" to confirm the reasonableness of an award. Counsel's declarations state a summary of the relevant hourly rates and time spent on the case. Blanchard Decl. at ¶¶ 34-37; Carlson Decl. at ¶¶ 13-18.[6] These hours were efficient and non-duplicative, and all were reasonable and necessary in reaching this Settlement. *Id.* All told, Plaintiff's anticipated lodestar (projected through settlement administration) is $142,862.50, and the requested fee represents a multiplier of 1.06b on counsel's lodestar. Blanchard Decl. at ¶ 39; Carlson Decl. at ¶ 19. *Compare Arp*

---

[6] Plaintiff's Counsel will, if the Court requires it, submit detailed records for *in camera* review.

*v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, at *19-22 (S.D. Ohio Nov. 5, 2020) (Ex. 18) (finding that, although a lodestar cross-check was "not required," the multiplier of 5.29 before accounting for additional work was appropriate given the extensive wage and hour experience of the plaintiff's counsel); *Lowther*, 2012 U.S. Dist. LEXIS 181476, at *17-19 (citing cases approving multipliers ranging from 4.3 to 8.74) (Ex. 19).[7]

Counsel's hourly rates are also reasonable considering the complexity of collective action litigation, counsel's extensive experience and the excellent recovery for opt-ins. Each attorney's and staff member's rates are supported by the market and consistent with other rates in this Circuit and nationally. *See, e.g.*, *Whitfield v. Trinity Rest. Grp., LLC*, No. 18-10973, 2019 U.S. Dist. LEXIS 182055, at *12 (E.D. Mich. Oct. 3, 2019) (finding $658 hourly rate for attorney with 9 years of experience in employment class and collective actions was reasonable) (Ex. 20); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS

---

[7] Courts routinely apply a multiplier to the lodestar in class action settlements. *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, at *37-38 (S.D.N.Y. Sept. 16, 2011) (noting that "[c]ourts routinely award counsel two to three times lodestar in class action settlements" and collecting cases) (Ex. 21); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-99, 303-04 (3d Cir. 2005) (finding no abuse of discretion where district court approved attorney's fees with a "fairly common" lodestar multiplier of 4.07 despite objection that lodestar multiplier could not be above 3).

170579, at *17 (S.D. Ohio Oct. 3, 2018) (concluding that $675 for a senior attorney and between $250 and $400 for additional attorneys were reasonable) (Ex. 22); *Smith v. Loc. Cantina, LLC*, No. 2:20-CV-03064, 2022 U.S. Dist. LEXIS 73598, at *15 (S.D. Ohio Apr. 19, 2022) (finding hourly rates from $550-$600 for partner-level attorneys reasonable) (Ex. 23);   *Fitzgerald v. P.L. Mktg., Inc.*, No. 217CV02251SHMCGC, 2020 U.S. Dist. LEXIS 117220, at *29 (W.D. Tenn. July 2, 2020) ("Class Counsel's hourly rates range from $325 to $600. [] The hours and rates are reasonable."); (Ex. 24); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, at *15-16 (S.D. Ohio Dec. 21, 2012) (concluding that $500 was a reasonable rate for two senior attorneys and rates between $100 and $450 were reasonable for other attorneys and involved staff) (Ex. 19); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010) (approving attorney rates ranging from $325 to $650 and paralegal rates from $90 to $215 in complex class action); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386, 386 n.6 (D. Md. 2006) (awarding rates of up to $595 per hour). Counsel's rates have also been approved in other litigation. Blanchard Decl. at ¶ 35; Carlson Decl. at ¶¶ 16-18. Thus, the lodestar cross-check supports the requested fee award.

### e.  *The Complexity of the Litigation*

Wage-and-hour collective actions are complicated and time-consuming. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013). This case is

no exception, as it required counsel to develop a theory for conditional certification and involved resolution of potentially complex factual and legal disputes regarding liability, damages, and collective treatment, all of which Plaintiff's counsel had to analyze and consider in both litigating the case to this point and in determining whether it was in the opt-ins' best interest to resolve the matter.

### f.  *Counsel's Skill*

As set forth in the Declarations of Plaintiff's Counsel, counsel are qualified, experienced, and have substantial credentials in class and collective action litigation. Similarly, Alro's counsel has significant experience litigating FLSA actions. Notably, Plaintiff's counsel was able to use a *failed* FLSA case to successfully move for conditional certification in this case. Without this creativity and skill, opt-ins would not be able to enjoy their substantial recoveries. Therefore, this factor supports approval of the requested fee award.

### 2.  *The Court Should Approve Payment for Plaintiff's Litigation Costs*

In addition to attorneys' fees, Plaintiff's counsel seek out-of-pocket litigation costs capped at $5,000.00 and which are currently estimated at $4,818.27. Blanchard Decl. at ¶¶ 43-44; Carlson Decl. at ¶ 20. Plaintiff's counsel advanced the requested costs with the risk of no recovery. Blanchard Decl. at ¶ 43. Such costs were necessary for the litigation, including filing and court admission fees, mediation fees, and notice administration. *Id.* at ¶¶ 43-44. Defendants do not oppose this request, and

such requests are routinely granted. *See, e.g.*, *Fields v. KTH Parts Indus., Inc.*, No. 3:19-CV-8, 2022 U.S. Dist. LEXIS 143881, at *19 (S.D. Ohio Aug. 9, 2022) ("Expense awards are customary when litigants have created a common settlement fund for the benefit of a class.") (Ex. 25).

### C.    THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD

The Settlement provides for a service award to Named Plaintiff Dennis Reeb in the amount of $10,000.00. The Sixth Circuit has recognized that service awards are a way of "encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 885, 897 (6th Cir. 2003). Moreover, courts approving such service awards do so to recognize the burdens that named plaintiffs incur during class litigation. *See In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). Courts have noted the importance of service awards in wage and hour cases like the present one, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank*, 228 F.R.D. at 187-88.

Mr. Reeb brought this action on behalf of other Alro warehouse employees who allege that they were not paid for all their hours worked and was willing to put his name and reputation on the line to assert the rights of his co-workers. He ably

assisted counsel by providing material information about the merits and scope of the case. Carlson Decl. at ¶¶ 21-24. Without Mr. Reeb's willingness and involvement in this case, this settlement would have been impossible, and hundreds of Alro employees would not be benefiting from his efforts. *Id.* Moreover, Mr. Reeb has agreed to release not just wage and hour claims against Alro, but *all* known and unknown claims he might have against the company. *Id.*; *see also* Agreement at ¶ 3.1-3.6. This broader release also supports his request that this Court approve the service award. *See Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *42-43 (N.D. Ohio Sept. 1, 2011) (Ex. 26).

The requested amount is similar to or less than those approved in this Circuit and in wage and hour actions in other jurisdictions. *See, e.g.*, *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *19-20 (May 25, 2013) (approving a $12,500.00 service award out of  a $452,380.00 gross settlement amount) (Ex. 27); *Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245, 2018 U.S. Dist. LEXIS 50800, at *28 (E.D. Tenn. Mar. 8, 2018) (Ex. 28) (approving a $10,000.00 service award); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *20 (S.D. Ohio July 11, 2014) (approving a $10,000.00 service award to each class representative) (Ex. 14); *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, at *6 (S.D.N.Y. Mar. 24, 2016) (Ex. 29) (approving a $30,000.00 service award that represented

approximately 5% of the settlement fund, finding that was "well within the range of service awards recently approved" in the district). The requested service award here is reasonable and should be approved.

### D. THE COURT SHOULD APPROVE THE REQUESTED THIRD-PARTY SETTLEMENT ADMINISTRATOR PAYMENT

Finally, Plaintiff submits that the $12,000.00 maximum payment to the third-party settlement administrator is reasonable and should be approved. *Compare Jeter-Polk v. Casual Male Store, LLC*, ___ F. Supp. 3d. ___; No. EDCV14891VAPDTBX, 2016 U.S. Dist. LEXIS 204837, at *24 (C.D. Cal. June 29, 2016) (approving $11,500 payment to third-party settlement administrator in settlement class of approximately 400) (Ex. 30).

### III.  CONCLUSION

This settlement is the hard-fought product of extensive arm's-length negotiations between experienced counsel and fairly and reasonably resolves a *bona fide* dispute. The Agreement and requested attorneys' fees, litigation costs, service award, and third-party administrator costs satisfy the criteria for a fair and reasonable settlement as set forth by the Sixth Circuit. Plaintiff respectfully requests that this Court enter the Proposed Order approving and effectuating the terms of the Agreement.

Respectfully submitted,

BLANCHARD & WALKER, PLLC          LAW OFFICE OF MATTHEW D.
                                 CARLSON

/s/ David M. Blanchard
David M. Blanchard (P67190)         Matthew D. Carlson
Frances J. Hollander (P82180)       3959 N. Buffalo Road, Suite 29
221 N. Main Street, Suite 300       Orchard Park, NY 14127
Ann Arbor, MI 48104                 Telephone: (716) 242-1234
(734) 929-4313                      mdcarlson@mdcarlsonlaw.com
blanchard@bwlawonline.com
hollander@bwlawonline.com

*ATTORNEYS FOR PLAINTIFF*

Dated:  December 14, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2022, my paralegal, Natalie M. Walter, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

<u>/s/ David M. Blanchard</u>
David M. Blanchard (P67190)
BLANCHARD & WALKER PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: 734.929.4313
blanchard@bwlawonline.com